No. 22-2322

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHRISTOPHER L. ASBURY,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Central District of Illinois, No. 19-cr-20061
The Honorable Colin S. Bruce

---

**BRIEF FOR THE UNITED STATES**

---

GREGORY K. HARRIS
  *United States Attorney*

JEFFREY D. KIENSTRA
  *Assistant United States Attorney*
  *Office of the United States Attorney*
  *211 Fulton Street, Suite 400*
  *Peoria, Illinois 61602*
  *(309) 671-7050*

# TABLE OF CONTENTS

Page

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES............................iii

JURISDICTIONAL STATEMENT .................................................................. 1

ISSUES PRESENTED FOR REVIEW .............................................................. 2

STATEMENT OF THE CASE......................................................................... 3

    A. Asbury Traffics Methamphetamine.................................................... 3

    B. A Jury Finds Asbury Guilty Despite His Lies Under Oath............................ 4

    C. The District Court Imposes Sentence.................................................. 5

        1. Probation prepares a presentence report ..................................... 5

        2. The district court holds a sentence hearing ................................. 7

    D. This Court Vacates the Sentence on Direct Appeal ........................................ 7

    E. The District Court Imposes a New Sentence on Remand ............................. 8

        1. Probation prepares a new presentence report............................... 8

        2. The parties submit sentencing memoranda................................... 9

        3. The district court holds a new hearing and explains its sentence .......... 11

    F. Asbury Appeals ............................................................................ 15

SUMMARY OF THE ARGUMENT .............................................................. 16

ARGUMENT .............................................................................................. 17

I. The District Court Committed No Procedural Error............................... 17

    A. Asbury Waived Objection to the Adequacy of the Court's Explanation .... 17

B. The District Court Fully Addressed Asbury's Arguments in Mitigation and Explained Its Sentence ................................................................... 18

II. Asbury's Sentence is Substantively Reasonable .................................... 24

CONCLUSION ............................................................................................ 29

CERTIFICATE OF SERVICE ...................................................................... 30

# TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

Page(s)

**Cases**

*Chavez-Mesa v. United States*, 138 S. Ct. 1959 (2018) ...............................................18-19

*Gall v. United States*, 552 U.S. 38 (2007) .......................................................................28

*Pepper v. United States*, 562 U.S. 476 (2011) ..................................................................22

*Rita v. United States*, 551 U.S. 338 (2007) ..........................................................18, 19, 25

*United States v. Asbury*, 27 F.4th 576 (7th Cir. 2022) ...................................................7-8

*United States v. Blagojevich*, 854 F.3d 918 (7th Cir. 2017) .........................21, 22, 26, 27

*United States v. Brown*, 932 F.3d 1011 (7th Cir. 2019) ...........................................17, 18

*United States v. Bustos*, 912 F.3d 1059 (7th Cir. 2019) .................................................24

*United States v. Dickerson*, 42 F.4th 799 (7th Cir. 2022) ..............................................24

*United States v. Garcia-Segura*, 717 F.3d 566 (7th Cir. 2013) .....................................17

*United States v. Gibson*, 996 F.3d 451 (7th Cir. 2021) ..................................................26

*United States v. Marin-Castano*, 688 F.3d 899 (7th Cir. 2012) .......................19, 24, 25

*United States v. Maxfield*, 812 F.3d 1127 (7th Cir. 2016) ..............................................18

*United States v. Oregon*, 58 F.4th 298 (7th Cir. 2023) ...................................................28

*United States v. Porraz*, 943 F.3d 1099 (7th Cir. 2019) .................................................24

*United States v. Settles*, 43 F.4th 801 (7th Cir. 2022) .....................................................24

*United States v. Shoffner*, 942 F.3d 818 (7th Cir. 2019) ...........................................22, 23

*United States v. Stephens*, 986 F.3d 1004 (7th Cir. 2021) ...........................18, 20, 21, 23

*United States v. Washington*, 739 F.3d 1080 (7th Cir. 2014) .........................................24

**Statutes**

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3553 ....................................................................... 7, 16, 27

18 U.S.C. § 3742 ................................................................................ 1

21 U.S.C. § 841 .......................................................................... 1, 4, 28

21 U.S.C. § 851 ................................................................................ 4

28 U.S.C. § 1291 ................................................................................ 1

**Other Authorities**

Fed. R. App. P. 4 .............................................................................. 1

# JURISDICTIONAL STATEMENT[1]

The jurisdictional statement in the defendant's brief is not complete and correct.

A grand jury in the Central District of Illinois returned an indictment charging the defendant with distributing at least fifty grams of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The district court had jurisdiction under 18 U.S.C. § 3231.

A jury found the defendant guilty. In a previous appeal, this Court vacated the defendant's sentence and remanded for resentencing. On remand, the district court imposed sentence on July 8, 2022, and it entered judgment on July 19, 2022.

The defendant timely filed a notice of appeal on July 21, 2022. *See* Fed. R. App. P. 4(b). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] We use the following abbreviations for record citations: "R." followed by a number refers to a document in the district court record; "D.E." followed by a date refers to a docket entry in the district court record; "PSR" refers to the third revised presentence investigation report filed June 28, 2022 (R. 82); "Sent.Tr." refers to the transcript of the sentencing hearing held on remand on July 8, 2022 (R. 88); and "Def.Br." refers to the defendant's opening brief in this appeal.

## ISSUES PRESENTED FOR REVIEW

I.  (a) Whether, by agreeing that the district court had addressed all of his arguments in mitigation and declining further explanation, the defendant waived objection to the adequacy of the court's sentence explanation;

(b) or in the alternative, whether the court adequately addressed the defendant's arguments in mitigation.

II.  Whether the defendant's within-guideline sentence is substantively reasonable.

## STATEMENT OF THE CASE

Defendant Christopher Asbury distributed methamphetamine, and a jury found him guilty. On remand from a previous appeal, the district court imposed a sentence within the Guidelines range. After the court explained its sentence, Asbury confirmed that the court had addressed his arguments in mitigation, and he declined any further explanation. On appeal, Asbury now challenges the adequacy of the court's explanation and the reasonableness of his within-guideline sentence.

### A. Asbury Traffics Methamphetamine

In the summer of 2019, law enforcement officers were investigating drug trafficking by Asbury in Paris, Illinois. R. 72 at 30–31, 48–49. They pulled over an individual who had left Asbury's house, and that person agreed to assist with the investigation, as he knew he could buy methamphetamine from Asbury. *Id.* at 31–32, 127, 135. The source placed an initial call to Asbury, who agreed to sell four ounces of methamphetamine for $2,500. *Id.* at 86.

The officers thus arranged a controlled buy. R. 72 at 40–41. They began by having the source call Asbury again to change the amount from four ounces to three, which Asbury agreed to sell for $2,000. *Id.* at 34, 87. Officers monitored and recorded that call. *Id.* Asbury and the source agreed to meet at a mutual friend's home to complete the sale. *Id.* at 87–88.

The officers outfitted the source with video cameras and supplied him with $2,000, and the source drove to the agreed location. R. 72 at 139–43. When Asbury arrived, they both walked into the garage. *Id.* at 98. Asbury was carrying a blue hat, which he set on a table. *Id.* The source set down the $2,000; Asbury slid the hat towards him; and the source picked up three bags of methamphetamine from the hat. *Id.* at 98–99, 113–14.

Asbury and the source then left, and the source returned to the officers and handed over the three bags. R. 72 at 114, 150. Laboratory analysis confirmed that the bags contained 83.1 grams of ninety-nine-percent-pure methamphetamine, enough for many hundreds of individual doses. *Id.* at 59, 183.

B.  A Jury Finds Asbury Guilty Despite His Lies Under Oath

In September 2019, a federal grand jury returned an indictment charging Asbury with distributing at least fifty grams of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). R. 1. The indictment also alleged that Asbury had a prior conviction for a serious drug felony. *Id.* The government filed an information under 21 U.S.C. § 851 identifying the prior conviction, which would increase the minimum prison sentence from ten years to fifteen. R. 13; 21 U.S.C. § 841(b)(1)(A). The maximum in either event was life. § 841(b)(1)(A).

Asbury pleaded not guilty and proceeded to trial, where the government presented testimony from officers and the source about the controlled buy. R. 72

at 25–200. It also played the recorded call and videos from the controlled buy. *Id.*
at 35–40, 90–113. The parties stipulated to the drug weight and purity, and
Asbury also stipulated to the facts relevant to his prior conviction. *Id.* at 24, 59.

Asbury testified in his own defense. R. 73 at 42–54. He admitted that he knew
the source and that they met in their friend's garage on the day of the controlled
buy. *Id.* at 42–45. He claimed, though, that he came only to pick up Tylenol for a
headache, and that all he did was chat with the source, pick up Tylenol, and
leave. *Id.* at 45. The jury found otherwise and returned a guilty verdict. R. 46. It
also found that Asbury's offense involved at least 50 grams of methamphetamine
and that his prior conviction met the criteria for a serious drug felony. *Id.*

C.  The District Court Imposes Sentence

1.  Probation prepares a presentence report

The Probation Office prepared a presentence report in advance of sentencing.
R. 56. In calculating the drug quantity, the probation officer began with the 80-
plus grams of pure methamphetamine that Asbury sold to the source. *Id.* ¶ 13.
The probation officer further reviewed discovery materials, including
investigative reports of interviews with several other people who described the
amounts of methamphetamine that Asbury distributed over the years leading up
to the controlled buy. *Id.* ¶¶ 14–17, p. 30. The probation officer found those
reports to be credible and concluded that Asbury's relevant conduct included

another fifteen kilograms of a mixture of methamphetamine. *Id.* The relevant

conduct thus increased the base offense level from 30 to 36. *Id.* The presentence

report also included a two-level enhancement for obstruction of justice, based on

Asbury's perjury at trial, producing a total offense level of 38. *Id.* ¶¶ 19-32.

The presentence report then detailed Asbury's extensive criminal history,

spanning the previous two decades. R. 56 ¶¶ 34–53. Asbury had about ten felony

convictions. *Id.* ¶¶ 37, 38, 40–42, 45, 46, 50. In eight prior cases, he received

sentences to the Illinois Department of Corrections. *Id.* Two of those convictions

were for aggravated battery, and another was for burglary. *Id.* ¶¶ 37, 38, 40. Most

of the others involved controlled substances. *Id.* ¶¶ 41, 42, 44–46, 50. Asbury had

several misdemeanor convictions and had received jail sentences, too. *Id.* ¶¶ 34–

36, 39, 43, 47–49. And in many of those cases, Asbury violated the terms of his

supervision. *Id.* ¶¶ 35–38, 41, 42, 45–47. All told, this resulted in 34 criminal

history points, placing him in criminal history category VI and producing a

Guidelines range of 360 months to life. *Id.* ¶¶ 53, 100.

Asbury submitted numerous objections to the presentence report. R. 56 at 28–

39. One of them concerned the drug-quantity calculation. R. 56 at 29–31. Asbury

primarily contested whether the amounts beyond his offense of conviction

qualified as relevant conduct under the Guidelines, though he also asserted that

the relevant conduct "is not true" and that he "denies the drug amounts." *Id.*

2.  The district court holds a sentencing hearing

At sentencing, neither party presented evidence, and the district court overruled each of Asbury's objections, adopting the Guidelines range of 360 months to life. R. 75 at 10–22. The government sought a sentence of thirty years, highlighting Asbury's extensive criminal history. *Id.* at 25–32. Asbury asked for the statutory minimum sentence of fifteen years, arguing that his offense was the product of drug abuse that began at a young age. *Id.* at 33–35. In his allocution, Asbury professed "newfound respect and appreciation for the law" and noted that he had been attending programs while in jail. *Id.* at 36–38.

The district court then explained its sentence. R. 75 at 38–45. It noted that drug dealing is inherently a serious offense. *Id.* at 39. It also relied heavily on Asbury's criminal history, including numerous prior felonies and eight prison sentences. *Id.* at 39–41. The court characterized those convictions and sentences as not just a "wake-up call," but a "wake-up beating," which "didn't seem to have an effect." *Id.* at 40. It also noted that Asbury committed perjury at trial. *Id.* at 42–43. Based on its weighing of the factors under 18 U.S.C. § 3553(a), the court imposed a prison sentence of thirty years. *Id.* at 45.

D.  This Court Vacates the Sentence on Direct Appeal

On appeal, Asbury challenged his sentence, arguing that the evidence did not support the drug-quantity calculation. *United States v. Asbury*, 27 F.4th 576, 578

(7th Cir. 2022). In response, the government conceded that the record could not

sustain that finding: Asbury had offered nothing more than a bare denial, but the

presentence report did not provide the details underlying the relevant conduct,

and the government did not submit its proof at sentencing. *See id.* at 578–79. This

Court accepted that concession and found that the error was not harmless, so it

remanded for re-sentencing without the contested relevant conduct. *Id.* at 583.

### E.  The District Court Imposes a New Sentence on Remand

#### 1.  Probation prepares a new presentence report

On remand, the Probation Office prepared a revised presentence report,

which reflected three principal changes. First, as determined on appeal, the

report calculated the drug quantity based only on the drugs Asbury sold during

the controlled buy, leading to a base offense level of 30 and a total offense level of

32. PSR ¶¶ 22–30. Second, the report included a revised calculation of Asbury's

criminal history score. PSR ¶¶ 32–49. Although Asbury had not raised such a

challenge on appeal, the change in his relevant conduct affected the time period

for assessing criminal history points, so several of his prior convictions aged out.

*Id.* Asbury's revised criminal history score thus became 21, which still fell well

within the highest criminal history category. *Id.* ¶ 49. That made his Guidelines

range 210 to 262 months of imprisonment. *Id.* ¶ 96. Finally, though Asbury had

not challenged the § 851 enhancement on appeal, and was thus barred from

doing so on remand, the government agreed to withdraw the § 851 information.
R. 85. The statutory minimum sentence thus became ten years instead of fifteen.
PSR ¶ 95.

The presentence report also included information about Asbury's
background. PSR ¶¶ 65–94. As before, it noted that Asbury reported having
"everything he needed while growing up," having "no problems in his family
home," and having a close relationship with his family as a child. *Id.* ¶ 68. It also
noted, as before, that Asbury had a serious substance abuse problem, which
began at a young age; that he had attended programs in jail before the first
sentencing hearing; and that he had earned a GED during a prior term of
imprisonment. *Id.* ¶¶ 76–85. Finally, the report included information about
Asbury's activities since the first sentencing. *Id.* ¶ 125. It noted that he had not
received any sanctions in prison, that he had participated in three educational
programs, and that he was signed up for or participating in some others. *Id.*

    2.   The parties submit sentencing memoranda

Both parties filed sentencing memoranda before the hearing. R. 84, 86. For his
part, Asbury sought a below-guideline sentence of 150 months. R. 84 at 2. He
argued that the circumstances had changed significantly since the first
sentencing hearing, as he now had a lower base offense level, fewer criminal
history points, and a shorter minimum sentence. *Id.* at 1–3. As mitigating factors,

he cited his struggles with drug abuse beginning at a young age and his support from friends and family. *Id.* at 4–9. He also referred in passing to his conduct since the first sentencing, noting that he had completed two courses, was enrolled in several others, and had received no sanctions. *Id.* at 7–8.

In its memorandum, the government sought the same 360-month sentence as before. R. 86 at 5. Asbury sold a large amount of highly pure methamphetamine, and he did so only eighteen months after finishing parole on his last conviction. *Id.* 10. He also lied under oath at trial. *Id.* at 10–11. And his criminal history showed that he simply could not be deterred from committing crimes. *Id.* at 11. Asbury's criminal history score was lower than before, but it still far exceeded the threshold to place him in the highest category, even though it now failed to account for a number of convictions. *Id.* at 11–12. The government acknowledged Asbury's lack of sanctions while incarcerated, but it noted that following the rules in prison "is expected, not a feat to be rewarded." *Id.* at 6. The government likewise noted that, while commendable, the coursework Asbury had completed in prison could not justify the downward variance he sought, as his own track record over many years showed that a lengthy sentence was necessary to satisfy the § 3553(a) factors. *Id.* at 6–7, 11–12.

3.   The district court holds a new hearing and explains its sentence

The court began the sentencing hearing by adopting the presentence report, to which neither party objected, and it noted the revised Guidelines range of 210 to 262 months' imprisonment. Sent.Tr. 5–6. The parties then offered sentencing arguments consistent with their written filings. *Id.* at 8–28. The government cited the seriousness of Asbury's drug dealing, his extensive criminal history, and his perjured testimony. *Id.* at 8–11. Asbury's attorney focused primarily on the legal developments since the first hearing, including the lower base offense level, criminal history score, and statutory minimum sentence. *Id.* at 11–15. He acknowledged that "any offense involving methamphetamine is serious," but he argued that Asbury had support from his friends and family and intended to rehabilitate himself. *Id.* at 17–25. He also twice referred to the court's ability to consider post-sentencing rehabilitation. *Id.* at 23–24, 26.

Asbury then gave an allocution. Sent.Tr. 28–31. He expressed regret for the destruction he had caused to his community and his family. *Id.* at 28–29. He stated, though, that he had stayed sober and signed up for any available classes while in prison, and that he did not plan to go back to his old ways. *Id.* at 29–30.

The court then explained its analysis of the § 3553(a) factors, beginning with the nature and circumstances of the offense. Sent.Tr. 32–33. It explained that methamphetamine distribution is "a very serious problem," and that it "destroys

11

not just families" but "entire communities," particularly in small towns like Asbury's. *Id.* The court noted, however, that the scope of the offense on remand was significantly narrower than at the first sentencing hearing, as it encompassed only Asbury's sale of over 80 grams of methamphetamine, not the additional amounts previously included in his relevant conduct. *Id.*

The court next addressed Asbury's history and characteristics. Sent.Tr. 33–36. It first noted that Asbury had difficulties during his childhood and that his family and members of the community continued to support him, which weighed in his favor. *Id.* at 33–34. It also looked favorably on Asbury's efforts to improve himself while incarcerated:

> [Asbury] has, while he's been incarcerated, he's received a GED. He's taken other self-help programs. They're referenced in the sentencing memorandum. I didn't write them all out, but I noted how many he took. It seemed like to me, from my reading of the classes he's taken, that he was taking just about every class he could take; and now he's sort of said that in his allocution.
>
> DEFENDANT ASBURY: I've been very busy, Your Honor.
>
> THE COURT: Good to hear.
>
> So that, that's a factor that weighs in his favor.

*Id.* at 34. The court likewise addressed Asbury's lack of sanctions in prison, but gave that conduct less weight:

> Now, I am also cognizant of the fact that incarcerated individuals are supposed to comply with prison rules, so that sort of cuts both ways. I mean, it -- on the one hand, I'm glad to hear people are beginning to

> comply with the rules that are dictated to them; so I -- and I agree they shouldn't be rewarded for simply doing what is expected. So, for me, that's kind of a wash.

*Id.* On balance, the court found that "it weighs in Mr. Asbury's favor that he is taking positive steps to improve himself." *Id.* at 34–35.

Asbury's criminal history, however, weighed heavily in the other direction. Sent.Tr. 35–36. The court explained that Asbury's history was among the worst it had seen. *Id.* at 35. Though Asbury had fewer points than before, his 21 criminal history points were "still well above the 13 criminal history points needed to place him in criminal history category VI." *Id.* His offenses included "aggravated batteries, weapons possession, resisting arrests, [and] several drug-related crimes." *Id.* Plus, "a lot of those convictions occurred while Mr. Asbury was on probation or parole from prior convictions." *Id.* at 35–36. The court thus concluded that the Guidelines "underrepresent his true criminal history." *Id.*

The court further addressed Asbury's perjury at trial. Sent.Tr. 40–42. It explained that Asbury "lied under oath" and made up a "patently ridiculous story." *Id.* at 41. His testimony had even caused some jurors to roll their eyes. *Id.* The court concluded that the Guidelines adequately accounted for that conduct through the enhancement for obstruction of justice. *Id.*

In weighing the sentencing factors, the court noted that any sentence within the statutory range would account for two of the factors—the need to afford

adequate deterrence and protect the public—but that other factors required a sentence above the statutory floor. Sent.Tr. 37–38. It also noted that it placed little weight on the withdrawal of the § 851 information. *Id.* at 40. For a combination of reasons, the court concluded that a sentence lower than the 360-month sentence imposed at the first sentencing hearing was warranted. *Id.* at 44–45. While still "very serious," Asbury's offense was not as serious as before, given the reduced drug quantity. *Id.* at 32, 44. The lower Guidelines range also favored a shorter sentence to avoid unwarranted disparities. *Id.* at 44–45. Based on those changes, as well as "the excellent behavior by Mr. Asbury in his intent to improve himself," the court concluded that a sentence well below the prior sentence was justified. *Id.* 45. Still, the court noted that the sentence also had to reflect the amount of drugs Asbury distributed and "how bad [his] criminal history" was. *Id.* at 46.

Based on that analysis, the court concluded that a sentence of 234 months was necessary to satisfy the purposes of sentencing. Sent.Tr. 46–47. As the court noted, that sentence fell near the midpoint of the revised Guidelines range. *Id.* at 47. The court also recommended that the Bureau of Prisons return Asbury to his prior place of imprisonment so that he could continue to participate in various programs, noting that Asbury had been "doing a good job of doing that on his own[.]" *Id.* at 48.

Finally, the court offered both parties an opportunity to request clarification or further explanation. Sent.Tr. 49–50. The government declined any further explanation and did not request any clarification. *Id.* at 49. The court then turned to defense counsel:

> Do you want any further explanation for my reasons for imposing that sentence?
>
> [DEFENSE COUNSEL]: No, Your Honor. Thank you.
>
> . . . .
>
> THE COURT: All right.
>
> Anything unclear? Confusing? Did I make any mistakes of which you're aware that I could correct at this time?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: Did I address all your princip[al] arguments in mitigation?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.

*Id.* at 49–50. The court entered judgment on July 19, 2022. R. 89.

## F. Asbury Appeals

Asbury filed a notice of appeal on July 21, 2022. R. 92. In his opening brief, he first claims procedural error, arguing that the district court failed to adequately address his post-sentencing conduct. Def.Br. 27–33. He also argues that his sentence is substantively unreasonable. *Id.* at 33–37.

## SUMMARY OF THE ARGUMENT

Asbury waived his claim of procedural error. At the conclusion of the sentencing hearing, Asbury's counsel expressly agreed that the court had addressed all of his principal arguments in mitigation, and he declined any additional explanation for the sentence. Having declined any further elaboration at sentencing, he cannot challenge the adequacy of the explanation on appeal.

Regardless, the court committed no procedural error. In explaining its assessment of the factors under 18 U.S.C. § 3553(a), the court expressly discussed Asbury's post-sentencing conduct and the weight it attached to that conduct. The court also cited that conduct as one of the factors that justified a ten-plus-year reduction in Asbury's sentence. The court thus not only addressed that argument in mitigation, it weighed that factor in Asbury's favor.

Finally, Asbury's sentence is substantively reasonable. His within-guideline sentence receives a presumption of reasonableness on appeal, and Asbury has offered no basis to overcome that presumption. He committed a serious offense and perjured himself at trial, and his criminal history was literally off the chart. The district court reasonably weighed those factors against Asbury's arguments in mitigation in finding that a sentence near the middle of the Guidelines range was necessary to comply with 18 U.S.C. § 3553(a).

## ARGUMENT

Asbury has identified no procedural error, as he waived any objection to the adequacy of the district court's explanation, and the court fully addressed his arguments in mitigation. His within-guideline sentence is substantively reasonable, too, so this Court should affirm.

### I. The District Court Committed No Procedural Error

#### A. Asbury Waived Objection to the Adequacy of the Court's Explanation

First, by agreeing that the district court had addressed his arguments in mitigation, Asbury waived his procedural objection. A district court must address a defendant's principal arguments in mitigation and offer enough explanation for its sentence to allow for appellate review. *United States v. Brown*, 932 F.3d 1011, 1019 (7th Cir. 2019). But this Court also encourages sentencing courts "to inquire of defense counsel whether they are satisfied that the court has addressed their main arguments in mitigation." *Id.* (quoting *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013)). When counsel responds in the affirmative, the defendant waives objection to the adequacy of the court's explanation. *Id.*

Asbury did exactly that. After offering a lengthy explanation for its sentence, the district court asked defense counsel, "Do you want any further explanation for my reasons for imposing that sentence?" Sent.Tr. 49. Counsel declined. *Id.*

The court continued, asking if any portion of its explanation was unclear or confusing. *Id.* Again, counsel said no. *Id.* Finally, the court asked, "Did I address all of your princip[al] arguments in mitigation?" *Id.* at 50. Counsel answered in the affirmative: "Yes, Your Honor." *Id.*

Those were not generic, anything-further inquiries; the court expressly asked whether it had addressed Asbury's arguments in mitigation and whether he requested any further explanation. If Asbury wanted more explanation, "the time to point that out [wa]s at sentencing." *Brown*, 932 F.3d at 1019. "Having passed up the chance for elaboration" at sentencing, Asbury "cannot argue now that the court's explanation was inadequate." *United States v. Maxfield*, 812 F.3d 1127, 1130 (7th Cir. 2016). Asbury thus waived his procedural argument.

B.  **The District Court Fully Addressed Asbury's Arguments in Mitigation and Explained Its Sentence**

Even absent waiver, Asbury has not shown any error, as the district court addressed — and largely credited — his argument in mitigation based on his post-sentence conduct. This Court reviews claims of procedural error de novo. *United States v. Stephens*, 986 F.3d 1004, 1008 (7th Cir. 2021). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). "In some cases, it may be sufficient for purposes of appellate review that the judge

simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others." *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1965 (2018). That is particularly so when the court imposes a sentence within the Guidelines range. *Rita*, 551 U.S. at 357; *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012). District courts should also address a defendant's principal arguments in mitigation, but even a "short explanation" can suffice. *Marin-Castano*, 688 F.3d at 902.

The district court far exceeded that standard here. Asbury principally argues that the court procedurally erred by failing to address his argument based on his post-sentencing conduct, Def.Br. 25–32, but the court expressly and repeatedly addressed that argument. Sent.Tr. 34–35, 45, 48. The district court observed that Asbury had taken "just about every class he could take" in prison, which "weighs in his favor." *Id.* at 34. It also noted that Asbury had complied thus far with prison rules, but it viewed that factor as "kind of a wash," as inmates "shouldn't be rewarded for simply doing what is expected." *Id.* Still, the court explained that "it weighs in Mr. Asbury's favor that he is taking positive steps to improve himself." *Id.* at 34–35.

The court returned to Asbury's post-sentencing conduct in explaining its weighing of the competing sentencing factors. Sent.Tr. 45. It explained that "the excellent behavior by Mr. Asbury in his intent to improve himself" was one of

the factors the court relied on to reduce his sentence by over ten years as compared to the previous sentence. *Id.* Finally, in granting Asbury's request for a placement recommendation, the court recommended that Asbury be allowed to participate in substance abuse treatment or any other programs, noting that Asbury was "doing a good job of doing that on his own[.]" *Id.* at 48.

That explanation more than sufficed to show that the court considered Asbury's mitigation argument: the court expressly addressed Asbury's post-sentencing conduct and explained how it weighed that factor. In fact, the court said more about Asbury's post-sentencing conduct than his own attorney did. *See* Sent.Tr. 23–24, 26 (referring twice to post-sentencing rehabilitation in the course of a sixteen-page argument). He thus cannot demand more of the court. *Stephens*, 986 F.3d at 1011 (noting that "it is hard to fault the court for not discussing in the hearing a topic the defendant scarcely mentioned in that hearing"). The court's detailed discussions of the presentence report, the parties' sentencing arguments, and the letters in support likewise show that it considered the arguments in mitigation. *Id.* at 1009. And not only did the court consider and address this argument, it largely *agreed* with Asbury, citing his post-sentencing conduct as one of the reasons for reducing his sentence by over ten years. Sent.Tr. 45.

Asbury does not dispute that the court in fact addressed his post-sentencing conduct, or that the court explained how it weighed that conduct. Instead, he argues that the court should have viewed that conduct even more favorably and reduced his sentence by even more. Def.Br. 29–31. But that is a question of weight—a substantive objection, not a procedural one. *See United States v. Blagojevich*, 854 F.3d 918, 920 (7th Cir. 2017). "Because the district court expressed a clear view" on this topic, this Court has "no reason to seek further explanation." *Stephens*, 986 F.3d at 1011.

Nor has Asbury shown any error in how the court weighed this factor. He primarily objects that the court viewed one aspect of his argument as "kind of a wash." Def.Br. 31. At the outset, the court made that comment only in reference to Asbury's "compl[iance] with prison rules," not his post-sentencing conduct in general. Sent.Tr. 34–35. It noted that merely complying with prison rules did not warrant a reduction, but it further explained that Asbury's efforts to take classes in prison were "a factor that weighs in his favor," and that his "excellent behavior" in trying to rehabilitate himself contributed to a ten-year reduction in his sentence. Sent.Tr. 34, 45.

The court acted well within its discretion in viewing Asbury's lack of sanctions in prison in that manner. The Supreme Court has held that district courts may consider evidence of post-sentencing rehabilitation, not that they

must weigh that conduct in any particular fashion. *Pepper v. United States*, 562 U.S. 476, 504–05 (2011). *Pepper* noted only that "such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." *Id.* As this Court has explained, "[t]he authority recognized by *Pepper* belongs to the district judge." *Blagojevich*, 854 F.3d at 920. "As with many discretionary subjects the fact that a judge *could* have ruled otherwise does not imply that the judge was *compelled* to rule otherwise." *Id.* Even if Asbury would prefer that the court had weighed this factor differently, the law did not compel the district court to view his lack of sanctions in prison as a mitigating factor, instead of a neutral factor—or, the absence of an aggravating factor.[2]

Nor does the case Asbury relies on (Def.Br. 29–32) show otherwise. In *United States v. Shoffner*, 942 F.3d 818, 821–23 (7th Cir. 2019), the defendant's offense level on remand was four levels lower than at the first sentencing hearing, and he also made an "extensive presentation of his efforts at self-rehabilitation," which included completing at least twenty courses. Despite those developments in the defendant's favor, the district court imposed the same sentence as before, with little explanation as to why, so this Court found the explanation lacking. *Id.* at

---

[2] Asbury's lack of sanctions in prison is consistent with his criminal history, too; the presentence report does not reflect any sanctions or convictions for offenses committed while in prison, but it reflects persistent criminal conduct when not incarcerated. PSR ¶¶ 32–48.

823–24. Here, the court not only explained its assessment of Asbury's post-sentencing conduct, it expressly cited that conduct as one of the reasons for reducing Asbury's sentence by over ten years. And even in *Shoffner*, the Court did not hold that the district court had to weigh the defendant's post-sentencing conduct in his favor, only that it failed to say why it had not. *Id.* at 824.

Asbury finally suggests (Def.Br. 32–33) that the court's explanation as a whole failed to justify its sentence, but the court's seventeen-plus-page explanation shows otherwise. A sentencing court "need not march through 'every factor under § 3553(a) in a checklist manner;' only an 'adequate statement' of the applicable factors is needed." *Stephens*, 986 F.3d at 1010. The court addressed the nature and circumstances of Asbury's offense, deeming it "very serious." Sent.Tr. 32. It likewise considered his history and characteristics, viewing some aspects favorably but concluding that the Guidelines failed to fully account for his "bad" criminal history. *Id.* at 33–36. It also discussed Asbury's perjury, which the court explained warranted the two-level increase under the Guidelines. *Id.* 40–42. To account for the need to avoid unwarranted disparities, as well as for the seriousness of Asbury's offense and "how bad [his] criminal history is," the court concluded that a sentence of 234 months, "pretty close to being in the middle of that guideline range," was necessary. *Id.* at 46–47.

That discussion was far more than a "rote and summary invocation of the § 3553(a) factors." *United States v. Washington*, 739 F.3d 1080, 1082 (7th Cir. 2014). It was a detailed discussion of how the court applied those factors to the facts of this case, and how it weighed those factors in reaching a sentence. A court need not offer a mathematical calculation for arriving at a precise sentence. *See United States v. Settles*, 43 F.4th 801 (7th Cir. 2022). "It is enough that the record confirms that the court has given meaningful consideration to the § 3553(a) factors," *United States v. Bustos*, 912 F.3d 1059, 1063 (7th Cir. 2019), and the record here makes clear that the court did so.

## II.  Asbury's Sentence is Substantively Reasonable

Finally, the district court acted within its discretion in finding that a within-guideline sentence of 234 months was necessary to satisfy the § 3553(a) factors. "A district court enjoys 'wide' discretion in the weight it gives § 3553(a) factors." *United States v. Dickerson*, 42 F.4th 799, 807 (7th Cir. 2022). This Court reviews a sentence's substantive reasonableness for abuse of discretion. *Marin-Castano*, 688 F.3d at 902. In conducting that review, this Court does "not substitute [its] judgment for that of a district judge, who is better situated to make individualized sentencing decisions." *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019). In addition, sentences within or below the guideline range are

presumed reasonable on appeal. *Rita*, 551 U.S. at 347. A defendant bears the burden of overcoming that presumption. *Marin-Castano*, 688 F.3d at 902.

Here, the district court concluded that a 234-month sentence was necessary, and Asbury cannot overcome the presumption of reasonableness that applies to that within-guideline sentence. The court viewed Asbury's offense as "very serious," noting that methamphetamine distribution "destroys not just families," but "entire communities," and that Asbury had distributed over 80 grams of methamphetamine, which the revised Guidelines range reflected. Sent.Tr. 32, 39–40. The court also relied on Asbury's "bad criminal history," which the court characterized as one of the worst criminal histories it had seen. *Id.* at 35. Asbury's convictions included "aggravated batteries, weapons possession, resisting arrests, [and] several drug-related crimes," and he committed many of his offenses while "on probation or parole from a prior conviction." *Id.* at 35–36. His 21 criminal history points far surpassed the 13 points required for the highest criminal history category, too. *Id.* at 38. The court thus concluded that the Guidelines "underrepresent his true criminal history." *Id.* at 36. The court further explained that Asbury "lied during the trial while under oath," telling such a "ridiculous story" that jurors even rolled their eyes. Sent.Tr. 41–42. The court found that the Guidelines adequately accounted for that conduct through the two-level enhancement for obstruction of justice. *Id.*

25

The court also discussed various mitigating factors. It noted that Asbury had difficulties as a child, which was not atypical; that Asbury supported his children; and that he had support from his family and members of the community. Sent.Tr. 33–34. It also noted that Asbury's efforts to improve himself by taking classes in prison weighed in his favor. *Id.* at 34–35. And it noted that any sentence in the statutory range could afford adequate deterrence and protect the public. *Id.* at 37–38.

The court then exercised its "broad discretion" to weigh those competing factors and arrive at the appropriate sentence. *United States v. Gibson*, 996 F.3d 451, 469 (7th Cir. 2021). It explained that the developments since the first hearing justified a significant reduction, but that the seriousness of Asbury's offense, the extensiveness of his criminal history, and the need to avoid unwarranted sentencing disparities required a sentence within and near the middle of the revised Guidelines range. Sent.Tr. 46–47. That decision fell well within the district court's discretion.

Asbury's contrary argument does not engage with the whole of the court's analysis. Instead, it focuses almost entirely on his post-sentencing conduct. Def.Br. 34–36. As already discussed, though, the court was not compelled to place any greater weight on Asbury's post-sentencing conduct. *Blagojevich*, 854 F.3d at 920. In addition, when imposing a sentence, a court must consider not

only a defendant's arguments in mitigation, but also the conduct that brought him to the sentencing hearing: his commission of a federal offense. § 3553(a)(1), (a)(2)(A). It must also consider aspects of a defendant's history and characteristics that may weigh in favor of a longer sentence, *id.*, like an unbroken pattern of breaking the law or a defendant's lies under oath.

The district court did so, explaining that Asbury's offense was "very serious," that his "bad" criminal history was underrepresented by the Guidelines, and that his testimony at trial was "patently ridiculous." Sent.Tr. 32, 35, 41. It weighed those considerations against the mitigating factors, including Asbury's history of drug abuse, his family support, and his efforts to improve himself, and found that, on balance, a sentence near the middle of the Guidelines range was necessary. *Id.* at 33–35, 45–47.

Asbury's only acknowledgement of the factors on the other side of the scale is that he distributed 82.2 grams of methamphetamine. Def.Br. 36. The Guidelines range already accounted for the drug quantity, though, so the court's consideration of the drug quantity supported its within-guideline sentence. Asbury also notes (Def.Br. 36) that the average sentence for a methamphetamine trafficker is 87 to 97 months, but Asbury is far from an average methamphetamine trafficker:

he sold enough drugs to fall in the highest statutory sentencing range,[3] § 841(b)(1)(A), his criminal history is off the chart, and he tried to lie his way out of responsibility for his offense. Finally, to the extent Asbury's reference to the average sentence imposed is meant to demonstrate a sentencing disparity, the Guidelines are themselves an anti-disparity formula, so the district court reasonably weighed that factor against a variance. *Gall v. United States*, 552 U.S. 38, 54 (2007); *United States v. Oregon*, 58 F.4th 298, 305 (7th Cir. 2023).

Asbury thus has not offered a basis to overcome the presumption of reasonableness. He wishes the court had imposed a shorter sentence, but a "disagreement about how much weight to give each § 3553(a) factor does not warrant reversal." *Oregon*, 58 F.4th at 302. The district court, therefore, acted within its discretion, so this Court should affirm.

---

[3] Contrary to Asbury's characterization of his offense as involving a "street-level sale," (Def.Br. 36), the three ounces of pure methamphetamine he sold were a distribution quantity. Tr. 72 at 181–83.

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted,

GREGORY K. HARRIS
*United States Attorney*

By:     /s/ JEFFREY D. KIENSTRA
*Assistant United States Attorney*
*Office of the United States Attorney*
*One Technology Plaza*
*211 Fulton Street, Suite 400*
*Peoria, Illinois 61602*
*(309) 671-7050*

**CERTIFICATE OF SERVICE**

I certify that on March 10, 2023, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit

by using the CM/ECF system. I further certify that all of the participants in this

case are CM/ECF users and that service will be accomplished by the CM/ECF

system.

/s/ JEFFREY D. KIENSTRA
*Assistant United States Attorney*